IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS M. MERCHANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 CV 7006 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff, Thomas M. Merchant, has moved for summary judgment, seeking reversal or remand of the Social Security Administration ("SSA") Commissioner's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Defendant, SSA Commissioner Michael Astrue ("Commissioner"), has filed a cross-motion for summary judgment, requesting that the Court affirm his final decision. For the following reasons, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the Commissioner's final decision.

**LEGAL STANDARDS**

**I.     Standard of Review**

"When the Appeals Council denies review, the ALJ's decision becomes the final decision of the Commissioner." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (per curiam). A reviewing court's role in reviewing an ALJ's decision is "'extremely limited.'" *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

A court will affirm an ALJ's denial of benefits if substantial evidence supports the

decision. *Schaaf*, 602 F.3d at 874; *see also Parker v. Astrue* 597 F.3d 920, 921 (7th Cir. 2010) ("Although judicial review of the decisions of administrative agencies is deferential, it is not abject."); *Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf*, 602 F.3d at 874 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)); *see also McCurrie v. Astrue*, No. 09 CV 3371, 2010 WL 333696, at *3 (N.D. Ill. Jan. 25, 2010). Accordingly, "even if reasonable minds could differ concerning whether [a claimant] is disabled," a reviewing court will affirm an ALJ's denial of benefits if the ALJ's decision has adequate support. *Simila*, 573 F.3d at 513 (internal quotations omitted).

Moreover, the ALJ must "build an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Id.* (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "[I]f the decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood*, 578 F.3d at 698 (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). "While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). As such, "'[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernible.'" *Simila*, 573 F.3d at 516 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)). An ALJ is not required, however, to mention or discuss every piece of evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). "An ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings," and "she need not recontact the source every time she undertakes such an evaluation." *Simila*, 573 F.3d at 517. A reviewing

2

court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms*, 553 F.3d at 1098.

## II.     Disability Standard

As the Seventh Circuit has explained:

> To qualify for disability benefits, a claimant must be "disabled," which the Social Security Act defines as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

*Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009) (quoting 42 U.S.C. §§ 423(a)(1)(E) and 423(d)(1)(A)). "[A] claimant must show that the disability arose while he or she was insured for benefits." *Id.* at 740.

"Social Security regulations prescribe a five-step test for determining whether a claimant is disabled within the meaning of the Act." *Id.*

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If an applicant can engage in other work, he is not disabled.

*Craft*, 539 F.3d at 674.

## BACKGROUND

### I.     Procedural Background

Plaintiff Merchant applied for DIB on December 28, 2006, alleging that he became

3

disabled on May 24, 1996. (Administrative Record ("AR") at 10.) The SSA denied Plaintiff's application initially on March 16, 2007 and upon reconsideration on June 29, 2007. (*Id.*) At Plaintiff's request, on November 17, 2008, Administrative Law Judge Mona Ahmed ("ALJ") held a hearing, at which Plaintiff, medical expert Ernest Mond, M.D. ("ME"), and vocational expert James Green ("VE") testified.[1] (*See* AR at 22, 54.) Plaintiff was represented by counsel at the hearing. (*Id.*)

The ALJ issued a decision on February 24, 2009, finding that Plaintiff was not disabled. (*Id.* at 10-21.) Specifically, the ALJ found that Plaintiff (1) last met the insured status requirements of the SSA on December 31, 2001; (2) had not engaged in substantial gainful activity since May 24, 1996; (3) had degenerative disc disease of the lumbar spine, status post fusion, and a history of carpal tunnel syndrome, status post surgical release; (4) did not have an impairment or combination of impairments that met or medically equaled one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) had the RFC to perform less than the full range of sedentary work, requiring a sit/stand option and the ability to alternate positions at will; (6) could not perform past relevant work; (7) was forty-eight years old on the date last insured; (8) had at least a high school education and was able to communicate in English; (9) had jobs available to him in significant numbers in the national economy; and (10) had not been under a disability from May 24, 1996, the alleged onset date, through December 31, 2001, the date last insured. (*Id.* at 12-20.) The SSA Appeals Council denied review of the ALJ's decision on September 4, 2009. (*Id.* at 1-3.)

---

[1] In an apparent oversight, the ALJ's decision incorrectly names Cheryl Hoiseth as the VE.

## II. Factual Background

Plaintiff Merchant testified at the hearing that he fractured his wrist on the job in 1996 (*id.* at 31); had carpal tunnel release surgery, after which he was eventually able to use his hand without a problem (*id.* at 31, 33-34); injured his back during rehabilitation for his wrist (*id.* at 31); underwent fusion surgery on his back (*id.*); was not able to work due to persistent pain in his lower back, left hip, and knee (*id.* at 31-33); did not go to a pain clinic that his doctors suggested (*id.* at 34); tried physical therapy to relieve his pain without success (*id.* at 36); was able to perform odd chores such as washing coffee cups, making the bed, and cutting the grass (*id.* at 37); could only sit for fifteen minutes before he needed to "stand up, walk around a little bit, [and] stretch" for "two minutes" to relieve the pressure on his lower back (*id.* at 39); and was in constant pain that was sometimes "dull," and other times "sharp" (*id.* at 39-41).

After Plaintiff's wrist injury and subsequent carpal tunnel release surgery, Plaintiff underwent two work-capacity evaluations, one in May 1997 and one in August 1997. (*Id.* at 220-38.) The rehabilitation consultant deemed the results of the August 1997 evaluation invalid due to Plaintiff's inconsistent performance and lack of effort on several objective functional tests. (*Id.* at 220.) During the evaluation, the consultant noted, Plaintiff was unable to lift an eighty-pound crate but was able to lift a 123-pound beam twelve inches off the ground. (*Id.* at 222.) The consultant also noted that Plaintiff did not exhibit pain mannerisms such as holding his back or grimacing, which would typically accompany his complaints of pain. (*Id.* at 231.)

Plaintiff subsequently injured his back during a work-hardening program and, in September 1997, he sought treatment from Dr. George S. Miz. (*Id.* at 284.) Dr. Miz noted that a discogram and post-discogram C.T. scan revealed concordant pain at the L5-S1 region of

Plaintiff's spine, with findings of internal disc disruption with a right-sided posterior annular tear and a probable herniation. (*Id.*) Plaintiff elected to undergo surgery, and Dr. Miz performed a lumbar spine fusion at the L5-S1 region on October 6, 1999. (*Id.* at 330-35.) In February 2000, Plaintiff complained of continued severe lower back pain, but his straight-leg-raising test was negative, and he no longer had radicular symptoms. (*Id.* at 244.) In March 2000, after Plaintiff reported persistent pain, Dr. Miz suggested proceeding with revision surgery and encouraged Plaintiff to seek a second opinion. (*Id.*)

In May 2000, Plaintiff visited Dr. Alexander J. Ghanayem for a second opinion. (*Id.* at 352.) Dr. Ghanayem noted that Plaintiff was tender at the base of the spine but had no focal motor deficits in the lower extremities. (*Id.*) Although the spinal fusion cages were well-placed, the fusion had failed. (*Id.*) Plaintiff's choices were to either live with his symptoms or to undergo a posterior stabilization procedure and rebone grafting. (*Id.*) In September 2000, a C.T. scan showed continued nonunion of the fusion at the L5-S1 region. (*Id.*) Dr. Miz placed Plaintiff at a sedentary restriction level, which imposed a ten-pound-lifting restriction on Plaintiff, and recommended that Plaintiff change positions often and eliminate frequent bending and stooping. (*Id.* at 243.) Dr. Miz further noted that Plaintiff had reached maximum medical improvement short of revision surgery. (*Id.*)

In February 2001, Dr. Miz again examined Plaintiff, who reported increased pain after he reportedly slipped on ice. (*Id.* at 242.) There was no change in Plaintiff's clinical examination. (*Id.*) Dr. Miz had difficulty determining the extent of fusion and noted that Plaintiff had a sitting or standing tolerance of approximately fifteen minutes at a time and required frequent positional changes to accommodate his residual pain. (*Id.*) In March 2001, Dr. Ghanayem again examined

Plaintiff, finding tenderness of the lumbar spine and lower back pain. (*Id.* at 362.) Neurologically, however, Plaintiff had no focal motor deficits. (*Id.*) Dr. Ghanayem felt that Plaintiff had organic and non-organic back pain and recommended sedentary duty to reintegrate Plaintiff back into the workplace. (*Id.*) Dr. Ghanayem felt that four hours of work per day was a good starting point, and that Plaintiff should be able to sit, stand, or walk about as needed. (*Id.*)

Plaintiff's insured status expired on December 31, 2001. (*Id.* at 12.) Between December 2001 and April 2003, the record does not indicate any medical treatment. In April 2003, Dr. Miz reported that Plaintiff's C.T. scan showed completion of the fusion and, compared to the September 2000 scan, further incorporation of the bone graft. (*Id.* at 240, 342.) In April 2005, Dr. Ghanayem noted that Plaintiff required no further medical care and that, assuming the fusion had healed, Plaintiff's performing in "at least" a light work capacity was "more than reasonable." (*Id.* at 354.) Dr. Ghanayem recommended a functional capacity evaluation to determine Plaintiff's true work capacity. (*Id.*)

At the hearing on November 17, 2008, the ME testified regarding Plaintiff's medical history before concluding that Plaintiff could "certainly" do sedentary work. The ME relied on the opinions of Dr. Miz and Dr. Ghanayem and the functional capacity evaluation test results. (*Id.* at 51). The ME testified that the results of the August 1997 functional capacity evaluation, which the rehabilitation consultant deemed invalid due to inconsistent performance, "bother[ed]" him. (*Id.* at 51-52.) The ME stated that he had "no reason to disagree with" Dr. Miz's placing Plaintiff, in September 2000, at a sedentary restriction level, or with Dr. Miz's noting that Plaintiff, in February 2001, had a limited tolerance for sitting or standing and required frequent positional changes to accommodate his residual pain. (*Id.* at 53.) The ME pointed out that

7

although Plaintiff's pain had not improved, Dr. Ghanayem felt that Plaintiff could work with the pain. (*Id.* at 53-54.)

The ALJ posed a hypothetical to the VE, asking whether there were occupations available in the regional economy for an individual of Plaintiff's age, education, and work experience who could perform only sedentary work with a sit/stand option. (*Id.* at 56-58.) The hypothetical included restrictions such as limited stooping and kneeling and no crouching or crawling. (*Id.*) The VE testified that such an individual would be able to perform the requirements of a charge account clerk, an information clerk, and a surveillance system monitor. (*Id.* at 58) There are 11,500 such jobs available in the regional economy. (*Id.*) The VE noted that Plaintiff could alternate positions as frequently as needed, provided it does not take him off task more than ten percent of the day, in which case Plaintiff would be "unemployable." (*Id.* at 59.) The VE agreed with the ALJ that Plaintiff could perform the jobs available to him in a seated or standing position. (*Id.* at 63.)

## ANALYSIS

Plaintiff argues that the Court should reverse the ALJ's decision because (1) the ALJ's hypothetical question to the VE was inadequate, (2) the ALJ ignored the ME's statement agreeing with Dr. Miz that Plaintiff required frequent positional changes to accommodate his pain, (3) substantial evidence does not support the ALJ's adverse credibility finding regarding Plaintiff's reported pain, (4) the ALJ should have given controlling weight to Dr. Miz's opinion that placed Plaintiff at a sedentary restriction level and recommended that Plaintiff change positions often, (5) substantial evidence does not support the ALJ's reconciliation of the various medical opinions, and (6) the ALJ improperly used Dr. Ghanayem's 2005 opinions.

8

Plaintiff first asserts that Dr. Ghanayem believed that Plaintiff needed "the freedom to walk away from the work station," and that the ALJ failed to include this alleged limitation in her hypothetical question to the VE. (R. 13, Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. at 7.) This assertion is without merit. "[A]n ALJ's hypothetical questions to a VE 'must include all limitations supported by medical evidence in the record.'" *Simila*, 573 F.3d at 520 (quoting *Steele*, 290 F.3d at 942). "'The ALJ is required only to incorporate those impairments and limitations that he accepts as credible.'" *Id.* at 521 (quoting *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007)). Here, the ALJ's hypothetical question to the VE included a sedentary exertion level with a sit/stand option, limited stooping and kneeling, and no crouching or crawling. (AR at 56-58.) Nothing in the record supports Plaintiff's argument that Dr. Ghanayem believed that Plaintiff needed to periodically leave the workstation. In March 2001, Dr. Ghanayem noted that Plaintiff "should be able to sit, stand or walk about as his symptoms necessitate." (*Id.* at 362.) As the ALJ noted during the hearing, however, Dr. Ghanayem's opinion "does not exactly say that [Plaintiff] needs to stand up and walk around for several minutes before he can then go back to work." (*Id.* at 61.) Plaintiff's testimony also failed to establish that he needed to leave the workstation. (*Id.* at 39.) Moreover, the VE stated that Plaintiff could alternate positions as often as needed, provided it does not take Plaintiff off task for more than ten percent of the workday. (*Id.* at 59.) Consequently, Plaintiff could "walk about" within his workstation as long as it does not take him off task for more than ten percent of the workday. Accordingly, the ALJ did not err in posing her hypothetical question without including the walk-away limitation.

Second, Plaintiff argues that the ALJ ignored the ME's statement agreeing with Dr. Miz

9

that "[Plaintiff] . . . requires frequent positional changes to accommodate his residual pain." (*Id.* at 242; R. 13, Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. at 10.) According to Plaintiff, frequent positional changes would have resulted in Plaintiff's being substantially off task for more than ten percent of the workday, rendering Plaintiff unemployable. (*Id.*) Under SSA regulations, "'frequent' means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6. Although the ALJ did not mention this particular statement, the ALJ did not ignore the ME's testimony. (AR at 18.) The ALJ specifically related, rather, that Plaintiff would not have been substantially off task due to positional changes. (*Id.* at 19.) Dr. Miz wrote that Plaintiff required frequent positional changes just after Plaintiff had slipped on ice, which, the ALJ noted, temporarily exacerbated Plaintiff's pain. (*Id.*) The ALJ was also entitled to note that Plaintiff was able to sit throughout the entire sixty-five minute hearing without any pain-related attention problems. *Id.*; *see Williams-Overstreet v. Astrue*, No. 09-1742, 2010 WL 431447, at *4 (7th Cir. Feb. 8, 2010) (citing SSR 96-7p); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Furthermore, there is nothing in the record to suggest that Dr. Miz intended "frequent positional changes" to mean occurring from one-third to two-thirds of the time. The ALJ's omission of the ME's agreement with Dr. Miz's statement was not improper.

Plaintiff's third argument is that substantial evidence does not support the ALJ's adverse credibility finding. (R. 13, Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. at 6.) "The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila*, 573 F.3d at 517 (internal quotations omitted). "An ALJ, not a reviewing court, is in the best position to evaluate

credibility." *Id.* at 513. Accordingly, a reviewing court affords an ALJ's credibility determination "considerable deference" and will overturn it only if "patently wrong." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (quoting *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006)). Here, the ALJ's credibility determination was not patently wrong. The ALJ considered several factors probative of Plaintiff's credibility. (AR at 17.) Specifically, the ALJ noted that: (1) Plaintiff did not explore options to control his pain, which indicated that his pain was manageable; (2) Plaintiff's daily activities were generally sedentary and "not inconsistent with his functional capacity"; (3) the invalid August 1997 functional capacity evaluation detracts from Plaintiff's allegations because inconsistencies in his performance suggest that Plaintiff did not put forth a solid effort; and (4) Plaintiff sat through the entire sixty-five minute hearing, during which he was attentive and answered questions. (*Id.*) The record reflects that Plaintiff did not go to a pain clinic that his doctors suggested (*id.* at 34); engaged in daily activities such as washing coffee cups, making the bed, and cutting the grass (*id.* at 37); was unable, during the August 1997 work capacity evaluation, to lift an eighty-pound crate but lifted a 123-pound beam twelve inches off the ground and did not exhibit pain mannerisms such as holding his back or grimacing (*id.* at 222, 231); and did not stand up or walk away at any point during the hearing. Accordingly, the ALJ's credibility finding is not patently wrong.

Next, Plaintiff argues that the ALJ should have given Dr. Miz's opinion controlling weight. (R. 13, Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. at 12.) A treating physician's opinion is entitled to controlling weight only if supported by objective medical evidence and consistent with other substantial evidence in the record. *See Denton*, 596 F.3d at 424; *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). Nevertheless, the ALJ may discount a treating

11

physician's opinion if the opinion is "inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Moreover, an ALJ "is not required to give controlling weight to [a physician's] ultimate conclusion of disability–a finding specifically reserved for the Commissioner." *Denton*, 596 F.3d at 424. An ALJ must "minimally articulate[] his reasons for crediting or rejecting evidence of disability." *Schmidt*, 496 F.3d at 842 (internal quotations omitted). Here, although Dr. Miz is a treating physician, the ALJ only discounted Dr. Miz's opinions that were either (1) based on Plaintiff's subjective reports, (2) internally inconsistent, or (3) legal conclusions reserved to the Commissioner. (AR at 18-19.) Specifically, the ALJ discounted Dr. Miz's opinions that assessed Plaintiff's daily functioning as reported to him by Plaintiff, concluded Plaintiff was "permanently" disabled, and indicated on workers' compensation forms that Plaintiff was disabled or unable to work. (*Id.*) The ALJ was entitled to do so. *See Denton*, 596 F.3d at 424; *Ketelboeter*, 550 F.3d at 625. Otherwise, the ALJ found that Dr. Miz's placing Plaintiff at a sedentary restriction level with a ten-pound lifting restriction and the opportunity to change positions often was consistent with the assessed residual functional capacity. (*Id.*)

Plaintiff also challenges the ALJ's reconciliation of the various medical opinions. (R. 13, Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. at 13.) "It is not up to [a reviewing court] to reweigh the medical evidence." *RAG Am. Coal Co. v. Office of Workers' Comp. Programs*, 576 F.3d 418, 429 (7th Cir. 2009). A reviewing court asks, rather, whether substantial evidence supports the ALJ's decision. *See Schaaf*, 602 F.3d at 874. An ALJ must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability

12

while ignoring evidence that points to a disability finding." *Denton*, 596 F.3d at 425. At the same time, "an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion." *Id.* Here, the ALJ considered all relevant medical evidence and found that "the consensus of the medical opinions is that Plaintiff should be capable of at least sedentary exertion, if given the ability to change positions as needed." (AR at 18-19.) The record supports the ALJ's conclusion. In September 2000, Dr. Miz indicated that Plaintiff could function with sedentary restrictions. (*Id.* at 243.) In March 2001, Dr. Ghanayem recommended sedentary duty to reintegrate Plaintiff back into the workplace. (*Id.* at 362.) Additionally, the ME concluded that Plaintiff could "certainly" do sedentary work. (*Id.* at 51.) Accordingly, the ALJ properly found that, in light of all relevant medical evidence, Plaintiff was capable of at least sedentary exertion.

Finally, Plaintiff argues that the ALJ improperly used Dr. Ghanayem's 2005 opinions because they were not retrospective to Plaintiff's December 31, 2001 date last insured. (R. 13, Pl.'s Mem. of L. in Supp. of Mot. for Summ. J. at 8-9.) "'A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period.'" *Liskowitz*, 559 F.3d at 742 (quoting *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998)). Evidence contemporaneous with the eligible period corroborates Dr. Ghanayem's 2005 opinions and Dr. Miz's 2003 opinions. The ALJ discussed two retrospective diagnoses. In 2003, Dr. Miz felt that a C.T. scan showed completion of the fusion and, compared to the September 2000 scan, further incorporation of the bone graft. In 2005, Dr. Ghanayem wrote that the claimant could "at least" perform in a light work capacity. Although Plaintiff does not challenge the ALJ's analysis of Dr. Miz's retrospective 2003 opinions, the ALJ appropriately relied on them in her decision. (AR at

16-19.) (AR at 16.) The ALJ noted that "[w]hile not directly relevant, this [retrospective] evidence is briefly summarized to the extent it sheds light on the claimant's condition during the time under consideration." (*Id.*) Thus, the ALJ expressly recognized the narrowly defined relevance of retrospective diagnoses. Furthermore, Dr. Miz and Dr. Ghanayem examined Plaintiff before his insured status expired, and their own opinions from the eligible period corroborate their 2003 and 2005 opinions, noting completion of the spinal fusion and that Plaintiff could perform in a light work capacity. The ALJ did not err in giving limited consideration to Dr. Ghanayem's retrospective diagnosis.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the Commissioner's final decision.

Dated: June 29, 2010                                    ENTERED:

                                                        _____
                                                        AMY J. ST. EVE
                                                        United States District Court Judge